ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **JOSÉ L. CAMACHO RAMOS** <br> RECURRENTE(S) <br><br> V. <br><br> **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** <br> RECURRIDA(S) | **KLRA202300485** | ***Revisión de Decisión Administrativa*** procedente del Departamento de Corrección y Rehabilitación (DCR) <br><br> Caso Núm. **B-1170-23** <br><br> Sobre: Remedio Administrativo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 30 de noviembre de 2023.

Comparece ante nos el señor **JOSÉ L. CAMACHO RAMOS** (señor **CAMACHO RAMOS),** por derecho propio e *in forma pauperis*, mediante *Solicitud de Revi[s]ión Administrativa* instada el 28 de agosto de 2023.[1] En su escrito, nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional (Respuesta)* emitida el 2 de agosto de 2023 por el **Departamento de Corrección y Rehabilitación (DCR)**.[2] En la antedicha *Respuesta*, el **DCR** determinó que "el Evaluador tiene la facultad para desestimar".

A continuación, exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] En futuras ocasiones, el Departamento de Corrección y Rehabilitación (DCR) deberá suministrarle la *Solicitud para que se Exima de Pago de Arancel por Razón de Pobreza* [OAT 1480] y *Declaración en Apoyo de Solicitud para Litigar como Indigente (In Forma Pauperis)* [OAT 1481] para que la parte promovente pueda cumplimentar los mismos y sean juramentados en presencia de los funcionarios autorizados en la agencia. Plan de Reorganización de Corrección, Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Artículo 7 (11).

[2] Esta determinación administrativa fue notificada el 8 de agosto de 2023. Véase Apéndice de la *Solicitud de Revi[s]ión Administrativa*, pág. 1.

**- I -**

El 5 de junio de 2023, el señor **CAMACHO RAMOS** suscribió una *Solicitud de Remedio Administrativo* en la cual solicitó que se hiciera "una interpretación correcta sobre la Ley 66 del 2022 esto toda vez que la técnica de Récord Criminal en esta institución, Sra. Naihomy Gilbes manifiesta que dicha ley que enmendó la Ley 87 del 2020 de bonificaciones por buena conducta y asiduidad y bonificaciones por estudio y trabajo, según ella es solo para las personas que est[á]n disfrutando del privilegio que concede la Junta de Libertad Bajo Palabra o se encuentren disfrutando de algún programa de desv[í]o".[3] Esta fue recibida el 1 de agosto de 2023 por el **DCR**.

Al día siguiente, el 2 de agosto de 2023, la señora Maribel García Charriez, evaluadora, decretó la *Respuesta al Miembro de la Población Correccional* recurrida aduciendo: "Regla XIII Sección 5- el Evaluador tiene la facultad para desestimar. A- Que no haya cumplido con el trámite procesal del presente Reglamento, incluyendo lo establecido en la Regla VII. Regla VII. Sección I- Será responsabilidad del miembro de la población correccional presentar las solicitudes de remedios en forma clara, concisa y honesta, estableciendo las fechas y nombres de las personas involucradas en el incidente. Igualmente, ofrecerá toda la información necesaria para dilucidar su reclamo efectivamente. Sr. Camacho, le recuerdo que todo remedio tiene que ser presentado de manera corta, concisa y precisa. Tiene que plantear todos sus argumentos de forma breve. Además[,] le recuerdo que nuestra División no dirige Remedios Administrativos a la División Legal de la Agencia. De usted tener alguna duda en cuanto a la aplicabilidad de la Ley #66 deberá escribir directamente al director de la División Legal de la Adm. de Corrección". Dicha *Respuesta* fue notificada el 8 de agosto de 2023.

El señor **CAMACHO RAMOS** presentó una *Solicitud de Reconsideración*. El 11 de agosto de 2023, **DCR** dictó su *Respuesta de Reconsideración al*

---

[3] Véase Apéndice de la *Solicitud de Revi[s]ión Administrativa*, págs. 2- 7.

*Miembro de la Población Correccional*.[4] Esta *Respuesta de Reconsideración* expresa:

> "Luego de evaluar la Solicitud de Reconsideración se determinó **DENEGAR** la misma. Al examinar la totalidad del expediente administrativo concluimos confirmar y modificar la respuesta recibida por parte de la Sra. Maribel García Charriez, Evaluadora de Remedios Administrativos Oficina de Bayamón. Sr. Camacho, le orientamos el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional expone que se podrá desestimar si la solicitud de remedios administrativos no se realiza de forma clara, concisa y honesta. Estableciendo las fechas y nombres de las personas involucradas en el incidente. Igualmente ofrecerá toda la información necesaria para dilucidar su reclamo efectivamente. Y cuando el miembro de la población correccional emite opinión en la solicitud. De tener alguna duda puede solicitar entrevista con el Área Seguridad".

Inconforme, el 28 de agosto de 2023, el señor **CAMACHO RAMOS** presentó ante este Tribunal de Apelaciones su *Solicitud de Revi[s]ión Administrativa.* Dicho escrito **no** contiene su(s) señalamiento(s) de error.

El 3 de octubre de 2023, pronunciamos una *Resolución* concediendo un plazo de treinta (30) días para exponer su posición sobre este recurso al **DCR.** Luego de la concesión de una prórroga, el 27 de noviembre de 2023, el **DCR**, representado por el Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Orden* en el cual nos solicita que confirmemos la determinación recurrida.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

A.        Revisión Administrativa

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[5] Su

---

[4] Esta decisión administrativa fue notificada el 16 de agosto de 2023. Véase Apéndice de la *Solicitud de Revi[s]ión Administrativa,* págs. 8- 9.

[5] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA §§ 9601-9713. *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

sección 4.1 establece la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[6]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[7] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[8] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[9]

No obstante, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que sus conclusiones e interpretaciones merecen gran consideración y respeto.[10] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[11]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[12] Particularmente, concretó las normas básicas sobre el alcance de la revisión judicial al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

---

[6] 3 LPRA § 9671.
[7] *Torres v. Junta Ingenieros,* 161 DPR 696, 707 (2004).
[8] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[9] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).
[10] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).
[11] *Adorno Quiles v. Hernández,* 126 DPR 191, 195 (1990).
[12] *Torres Rivera v. Policía de PR, supra.*

El alcance de la revisión de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[13]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado e su totalidad.[14] *Evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[15] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[16] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[17] A esto se le conoce como la norma de la *evidencia sustancial,* con lo cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[18] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[19]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[20] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello

---

[13] Sección 4.5 de la LPAU, 3 LPRA § 9675; *Oficina de Ética Gubernamental v. Martínez Giraud,* 2022 TSPR 93, 210 DPR ____ (2022).
[14] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[15] *Otero v. Toyota, supra*, pág. 728.
[16] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[17] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[18] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[19] *Íd.*
[20] *Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004).

que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[21]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[22] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[23]

### B.        Reglamento Núm. 8583

En cumplimiento con el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011;* la *Ley de Derechos de Personas Institucionalizadas,*[24] y la *Ley de Procedimiento Administrativo Uniforme*[25], en junio de 2015, se instituyó el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional* conocido como el *Reglamento* Núm. 8583.

Dicho *Reglamento* fue adoptado con la finalidad de promover que cada institución correccional resuelva efectivamente los reclamos de la población correccional.[26]

La División de Remedios Administrativos se instituyó para atender las quejas y agravios de las personas institucionalizadas en contra de **DCR** o sus funcionarios sobre cualquier asunto, incluyendo áreas tales como: agresiones físicas, verbales y sexuales; propiedad de confinados; revisiones periódicas a la clasificación; traslados de emergencia; confinados a ser recluidos en el anexo de máxima seguridad; reclusión solitaria, plan de recreación, ejercicios y uso de biblioteca para fines recreativos; servicios médicos y servicios religiosos. Así mismo, tendrá jurisdicción sobre solicitudes relacionadas,

---

[21] *Torres Santiago v. Departamento de Justicia,* 181 DPR 969, 1002 (2011).
[22] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008).
[23] *Capó Cruz v. Junta de Planificación*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[24] *Civil Rights of Institutionalized Persona Act (CRIPA,) Ley Pública Núm. 96-2476-(H.R.- 10).*
[25] Conocida como la Ley Núm. 170 de 12 de agosto de 1988, según enmendada.
[26] *Véase,* Introducción del Reglamento Núm. 8583, pág. 1.

directa e indirectamente, a "[a]ctos o incidentes que afecten personalmente al confinado en su bienestar físico, mental, seguridad personal o en su plan institucional, minimizar las diferencias entre los confinados y el personal, para evitar o reducir la radicación de pleitos en los Tribunales, plantear asuntos de confinamientos al DCR", entre otros asuntos.[27]

Una solicitud de remedio es un recurso que presenta un miembro de la población correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado a su confinamiento.[28]

Las Reglas XII- XV instituyen el procedimiento sobre: la radicación de la solicitud; emitir respuesta; revisión de respuesta de reconsideración de remedios administrativos; y revisión judicial ante el Tribunal de Apelaciones.[29]

- III -

El señor **CAMACHO RAMOS** alegó que el **Departamento de Corrección y Rehabilitación** (**DCR**) incidió al negarse a realizar una interpretación correcta de la Ley Núm. 66- 2022 sobre la acreditación de bonificaciones. En su escrito, el señor **CAMACHO RAMOS** no hizo señalamiento de error alguno. Empero, expresó su disconformidad con la *Respuesta*.

En el caso de marras, la División de Remedios Administrativos del **DCR** desestimó la *Solicitud de Remedio Administrativo* (*Solicitud*) por el incumplimiento para con el *Reglamento* Núm. 8583. Esto es, el señor **CAMACHO RAMOS** no presentó una petición para atender actos o incidentes que le afectaran personalmente en su bienestar físico, mental, seguridad personal o en su plan institucional. Más aún, el **DCR** aleccionó que podía dirigir su inquietud o duda a la División Legal de la **DCR**.

Consideramos que no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **DCR.** Las alegaciones del señor **CAMACHO RAMOS** carecen de fundamento para derrotar

---

[27] *Véase*, Introducción del Reglamento Núm. 8583, pág. 2- 3.
[28] Reglamento Núm. 8583, Regla IV, Inciso 24, pág. 10.
[29] *Íd*., págs. 24- 33.

la presunción de validez de la *Respuesta al Miembro de la Población Correccional (Respuesta)*. Más aún, no nos ha colocado en posición de alterar la decisión administrativa. Es por ello, que no procede que sustituyamos el criterio administrativo por la nuestra. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria o ilegal, o en forma tan irrazonable que haya abusado de su discreción. Hallamos que debemos abstenernos de intervenir con la *Respuesta* dado que esta coincide con el interés apremiante del Estado de mantener el orden y la seguridad en las instituciones correccionales. Por ello, discernimos que el **DCR** no cometió error alguno al desestimar la *Solicitud*.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Respuesta al Miembro de la Población Correccional* dictaminada el 2 de agosto de 2023 por el **Departamento de Corrección y Rehabilitación (DCR)**.

**Notifíquese inmediatamente.**

**Notifíquese al(a la) señor(a) JOSÉ L. CAMACHO RAMOS quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación: Institución Correccional Bayamón 501 Industrial Luchetti 50 Carr. Núm. 5 Unidad 501 2-F Bayamón, PR 00961-7403 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones